**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**BIG STONE GAP DIVISION**

| | | |
|---|---|---|
| **APRIL D. PRIDEMORE,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:11CV00047 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY** | ) | By: James P. Jones United States District Judge |
| | ) | |
| Defendant. | ) | |

*Joseph E. Wolfe, Wolfe, Williams, Rutherford & Reynolds, Norton, Virginia, for Plaintiff. Nora Koch, Acting Regional Chief Counsel, Region III, Nicole A. Schmid, Assistant Regional Counsel, and Charles J. Kawas, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the decision of the Commissioner.

I

Plaintiff April D. Pridemore filed this claim challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for supplemental security income benefits pursuant to Title XVI of the Social Security Act (the "Act"), 42 U.S.C.A. §§ 1381-1383f (West 2012). Jurisdiction of this court exists under 42 U.S.C.A. § 1383(c)(3).

Pridemore applied for benefits on January 27, 2009, alleging disability beginning January 27, 2009. Her claim was denied initially and upon reconsideration. A hearing was held before an administrative law judge ("ALJ") on May 11, 2011, at which Pridemore, represented by counsel, and a vocational expert testified. On May 23, 2011, the ALJ issued a decision denying Pridemore's claim. Pridemore submitted additional evidence with her request for review by the Social Security Administration's Appeals Council. The Appeals Council denied her request for review, thereby making the ALJ's decision the final decision of the Commissioner. Pridemore then filed a complaint in this court seeking judicial review of the Commissioner's decision.

The parties have filed cross motions for summary judgment, which have been briefed. The case is ripe for decision.

II

Pridemore alleged disability due to depression, anxiety, back pain, migraine headaches and tendonitis in the shoulders. However, she argues only that the ALJ's decision is not supported by substantial evidence because the ALJ failed to properly consider the severity of her mental limitations. The recitation of the facts, therefore, will be limited to those related to her mental impairments.



Case 2:11-cv-00047-JPJ-PMS Document 15 Filed 08/09/12 Page 2 of 14 Pageid#: 402

Pridemore was 31 years old on the date of the ALJ's decision. She had no past relevant work.

Pridemore was treated by Todd Cassel, M.D., for various ailments beginning in February 2008. Dr. Cassel's progress notes indicate a diagnosis of depression that was treated with Lexapro and Vistaril was added later to help with anxiety. Dr. Cassel encouraged Pridemore to consider counseling. At her January 2009 appointment, Dr. Cassel noted that Pridemore reported being "worse than normal" emotionally in that she was depressed, anxious, worried, and more irritable. (R. at 242.) He observed that her affect was "some flat, alert and oriented." *Id.*

On January 26, 2009, Dr. Cassel completed a medical evaluation form in which he opined that Pridemore would be unable to participate in employment and training activities for 120 days due to major depression.

Pridemore presented for psychiatric evaluation by Uzma Ehtesham, M.D., in January 2009. She denied any prior outpatient treatment, psychiatric hospitalizations, or suicide attempts. She did state that she had cut her wrist a few months earlier. Mental status examination showed hygiene as good, grooming as poor, affect as anxious, thought processes as goal oriented, insight as good, and judgment intact. Pridemore was alert and oriented times three. Dr. Ehtesham diagnosed Pridemore with bipolar disorder and depression and started her on

Abilify. She calculated Pridemore's global assessment of functioning ("GAF") score at 60.

Dr. Ehtesham completed a mental status evaluation form on March 13, 2009, stating that Pridemore had been cooperative, alert, and oriented times three at her appointment. It was also noted that Pridemore's mood was sad and that she showed confusion as well as decreased concentration and memory skills. Pridemore's thought content and judgment were assessed as fair. In a March 16 follow-up note, Dr. Ehtesham stated that Pridemore reported that he anger and mood symptoms were less, but that she still had excessive worry, fatigue, and irritability. Her grooming was fair to poor, eye contact was avoidant, insight was fair, and judgment was intact. There was no evidence of mania or self-mutilation and Pridemore denied any suicidal ideation. Dr. Ehtesham prescribed Klonopin. Pridemore was seen by Dr. Ehtesham at one-month intervals throughout 2009. She generally improved over that time.

In May 2009 Pridemore was referred to B. Wayne Lanthorn, Ph.D., for a consultative examination. Pridemore reported a history of sexual abuse and depression with decreased energy, occasional suicidal ideation, and irritability. She reported one panic attack in her history, but stated that she tensed up, getting upset, and having diarrhea when out in public. She stated that she was sleeping well with Abilify. Pridemore stated that her daily activities included washing

laundry, cleaning, grocery shopping, and caring for her two minor children. On examination, Pridemore correctly performed serial 7s and provided correct interpretations to three out of three commonly used analogies. She correctly spelled "world" forward and backward, recalled 7 digits forward and 6 digits backward, answered 5 out of 5 general knowledge questions correctly, and answered 3 out of 5 general judgment questions correctly. Dr. Lanthorn stated that Pridemore had normal memory function and concentration.

Dr. Lanthorn diagnosed major depressive disorder, recurrent, mild to moderate, and possibly personality disorder. He assessed Pridemore's GAF as 61 to 65. He found that Pridemore had no problems with her memory or concentration, had good communications skills, and performed a wide variety of household tasks. He found that she had only a mild limitation of her ability to perform simple or more detailed tasks, no limitation of her ability to maintain attention or concentration, would have mild to moderate difficulties interacting with others, and would only have mild limitations adapting to changes in a work setting.

Also in May 2009, Charles Tucker, Ph.D., a state agency psychologist, reviewed the evidence of record and agreed with Dr. Lanthorn's assessment of Pridemore's mental limitations.

In July 2009, Dr. Cassel completed another medical evaluation in which he concluded that Pridemore was unable to participate in employment and training activities for 90 days because of her depression.[1]

In December 2009, Pridemore saw Dr. Ehtesham and reported increased depression and mood swings because she had to leave her house. Follow-ups showed her depression as stable and her anger decreased.

Pridemore saw Dr. Cassel again in December 2009. She was alert and oriented and Dr. Cassel noted that her mood was "ok for now." (R. at 240.) He maintained her medications. This status stayed essentially the same through 2010. In July 2010, Dr. Cassel noted that Pridemore's husband had been recently incarcerated and she was caring for their two children.

On January 15, 2010, Julie Jennings, Ph.D., a state agency psychologist, reviewed the record and opined that Pridemore's mental impairments did not meet or medically equal any listed impairment and that Pridemore retained the mental residual functional capacity to meet the basic mental demands of competitive work on a sustained basis despite her mental limitations.

In March 2010, a mental status examination by Dr. Ehtesham showed Pridemore's hygiene and grooming as good, affect as anxious and irritable, thought

[1] It is unclear upon what basis Dr. Cassel formulated this opinion. Although he states that the opinion was based on an examination which took place on June 30, 2009, he also states that the form is "done by history" and that if any ongoing information is needed, then Pridemore's psychiatrist should be contacted. (R. at 229-230.)

processes as goal oriented, insights as good to poor, and judgment intact. Her GAF score was rated at 60. In April 2010, she admitted to cutting herself again and Geodon and Lamictal were added to her prescribed medication regimen. Her mood improved but in August 2010, she reported increased depression and anger because of her husband's incarceration. Her medication dosage was increased. In October 2010, she reported stress from taking care of her children. Follow-up notes indicate less anxiety but persistent depression and decreased sleep.

At the administrative hearing, Pridemore testified that she was unable to work because she has severe mood swings, anxiety disorder, and she cannot handle stress. She said that she experiences panic attacks when in a crowded place, manifested by tightness in her chest and difficulty breathing. She also testified that she goes to school for parent-teacher conferences and her daughter's softball games. She testified that the medications she had been on helped at first but over time they helped less. The ALJ posed a hypothetical individual with the same age, education and work experience as Pridemore who had the ability to understand, carry out, and remember simple instructions, respond appropriately to supervision, co-workers, and usual work situations, and to deal with changes to routine. The individual could not interact with the public or work around or near crowds. The vocational expert testified that such an individual could perform work as an assembler, packer, and inspector.

In his decision, the ALJ concluded that Pridemore had the severe impairments of bipolar disorder, anxiety disorder with panic attacks by history, and major depressive disorder. He found that none of these impairments met or medically equaled a listed impairment. He found that Pridemore has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but that she would need to avoid work around crowds, have minimal interaction with the public, and would be able to meet only the basic mental demands of unskilled work. Based on the testimony of the vocational expert, the ALJ found that Pridemore could perform work existing in substantial numbers in the national economy and, as such, was not disabled.

Pridemore submitted the following additional medical evidence to the Appeals Council in conjunction with her request for review of the ALJ's decision. On May 2, 2011, Pridemore was seen at Live Well Family Health and reported her life was "stressful now" because of her husband's incarceration. The treatment provider diagnosed dysthymic disorder and referred Pridemore to Solutions Counseling.

Pridemore was seen at Solutions Counseling several times. On June 7, 2011, Pridemore reported that her medication helped her depression and anxiety but that she was under financial stress. The social worker found that Pridemore was depressed, irritable, anxious, and angry with racing thought process, transient

paranoia, and fair judgment and insight. The social worker assessed a GAF score of 40. On July 5 the social worker noted that Pridemore had moderate symptoms of depression and anxiety. On August 10 Pridemore still showed moderate symptoms.

Pridemore argues that the ALJ's decision is not supported by substantial evidence. For the following reasons, I disagree.

## III

The plaintiff bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 1382c(a)(3)(B).

In assessing disability claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or medically equals the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she

could perform other work present in the national economy. *See* 20 C.F.R. § 416.920(a)(4) (2012). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.* The fourth and fifth steps of the inquiry require an assessment of the claimant's RFC, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.*; *Johnson v. Barnhart*, 434 F.3d 650, 653-54 (4th Cir. 2005).

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976). It is not the role of this court to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Pridemore argues generally that the ALJ's decision underestimated her mental limitations such that substantial evidence does not support the ALJ's RFC determination. Pridemore relies primarily on her own statements in her function reports and during the administrative hearing, as well as the records from Dr. Cassel and Dr. Ehtesham. The ALJ's decision was based on a careful review of the record and is supported by the record. Although it is clear that Pridemore suffers from depression and other mental health problems, these impairments do not seriously impact her life, as indicated by the fact that she has been able to singlehandedly run a household consisting of herself and two minor children. There is no evidence in the record that Pridemore's impairments have caused her to be hospitalized or otherwise seek inpatient treatment. The record, including the notes of Drs. Cassel and Ehtesham, show that Pridemore has responded to medication in general, although she has increased signs of depression and anxiety in response to situational stressors, such as the incarceration of her husband. Dr. Ehtesham assessed Pridemore's GAF score as a 60, in the upper range of moderate symptoms/functional limitations. Further, Dr. Lanthorn and both reviewing state agency psychiatrists concluded that Pridemore's mental impairments were not disabling and Dr. Lanthorn assessed her GAF score as 61-65, indicating only mild symptoms/functional limitations. In light of this record, Pridemore's own

statements as to the breadth of her limitations are, as the ALJ noted, "not entirely credible." (R. at 32.)

Pridemore also argues that the evidence presented to the Appeals Council sufficiently undermines the ALJ's decision such that remand to the Commission for further consideration is required. As noted above, this court is charged with reviewing the ALJ's decision, not that of the Appeals Council. *See McGinnis v. Astrue*, 709 F. Supp. 2d 468, 470 (W.D. Va. 2010). If substantial evidence supports the ALJ's findings and they were reached through application of the correct legal standard, then this court must affirm them. *Id.* at 470-71.

In the present situation, where the Appeals Council considered additional evidence before denying Pridemore's request for review of the ALJ's decision, the court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings." *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (en banc). The court must carefully balance its duty to review the entire record with its obligation to refrain from making determinations of fact. *See McGinnis*, 709 F. Supp. 2d at 471. The court should conduct a limited analysis of the additional evidence to assess whether the new evidence "is contradictory, presents material competing testimony, or calls into doubt any decision grounded in the prior medical reports." *Id.* If the court determines that the additional evidence creates a

conflict, then the case is remanded to the Commissioner to weigh and resolve the conflicting evidence. *Id.*

As noted above, the ALJ carefully considered the extent of Pridemore's limitations caused by her mental impairments and crafted the RFC to take account of those limitations. The evidence submitted to the Appeals Council does not contradict, materially compete with, or call into doubt the ALJ's decision. Indeed, the additional evidence simply shows that Pridemore has mild to moderate depression. The May 2, 2011, note from Live Well Family Health contains a diagnosis for dysthymic disorder but states no objective evidence or functional limitations which conflict with the ALJ's decision. The notes from Solutions Counseling state moderate symptoms of depression and anxiety. The social worker's assessment of a GAF score of 40, upon which Pridemore primarily relies, is not consistent with the record. Further, the social worker's assessments appear to be based primarily on Pridemore's subjective statements of symptoms as opposed to objective clinical testing. This evidence simply does not materially undermine the ALJ's decision which was based on the evidence of multiple psychiatrists and treatment notes indicating Pridemore has only mild to moderate mental limitations.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: August 9, 2012

/s/ James P. Jones
United States District Judge